UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
SANTANDER CONSUMER USA, INC.,

                         Plaintiff,

                                              MEMORANDUM & ORDER
          -against-                           20-CV-2656(JS)(AKT)

THE COUNTY OF SUFFOLK,

                         Defendant.
------------------------------------X
APPEARANCES
For Plaintiff:          Nicholas A. Duston, Esq.
                        Norris McLaughlin, P.A.
                        7 Times Square, 21st Floor
                        New York, New York 10036

For Defendant:          Drew W. Schirmer, Esq.
                        Suffolk County Attorney's Office
                        P.O. Box 6100
                        100 Veterans Memorial Highway
                        Hauppauge, New York 11788

SEYBERT, District Judge:

        Plaintiff Santander Consumer USA, Inc. ("Plaintiff")
commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983")
against the County of Suffolk (the "County"), arising out of
allegations that the County seizes vehicles without notice to
properly recorded lienholders in violation of the Fourth and
Fourteenth Amendments of the United States and New York state
Constitutions, inter alia. (Compl., ECF No. 1.) Before the Court
is the County's motion to dismiss the Complaint. (Mot., ECF No.

1

16; County Br., ECF No. 16-3; Pl. Opp., ECF No. 18[1]; Reply, ECF No. 20.)   For the reasons that follow, the motion is GRANTED in part and DENIED in part.   Plaintiff is GRANTED leave to file an Amended Complaint.

<u>BACKGROUND</u>[2]

Plaintiff is a corporation that provides financing for the purchase of vehicles and is the holder of duly recorded liens and security interests in certain vehicles (the "Subject Vehicles").   (Compl. ¶¶ 8, 10.)   In brief, Plaintiff alleges that the County unconstitutionally seized and deprived Plaintiff of its interest in the Subject Vehicles by: (1) refusing to comply with due process as mandated by the Second Circuit in <u>Ford Motor Credit Co. v. New York City Police</u>, 503 F.3d 186 (2d Cir. 2007); (2) failing to surrender possession of the Subject Vehicles unless Plaintiff executed a general release of liability and/or indemnification in favor of the County; (3) imposing possessory liens over the Subject Vehicles and refusing to return possession until the liens were paid; (4) detaining the Subject Vehicles

_____

[1] The County correctly points out that Plaintiff did not request permission to file a brief in excess of this Court's page limitation requirements.   (Reply at 1-2.)   While the Court does not condone Plaintiff's failure to abide by this Court's Individual Rules, in its discretion, the Court waives Plaintiff's noncompliance and considers the merits.

[2] The facts are drawn from the Complaint and are assumed to be true for purposes of this Memorandum and Order.

without warrant, or without an exception to the warrant requirement (collectively, the "Deprivations").  (Id. ¶¶ 21(a)-(d).)

Generally, Plaintiff alleges that the County justified its initial seizure of the Subject Vehicles as a forfeiture based on criminal conduct by the vehicle owners.  (Id. ¶¶ 1(a), 23.) Thereafter, the County determined that its initial justification for the seizures did not apply because Plaintiff (1) held a property interest in the Subject Vehicles, and (2) did not engage in acts related to alleged criminal conduct.  (Id. ¶¶ 24-26.)  Upon expiration of the initial justification, the County had no reason to retain possession of the Subject Vehicles pending forfeiture. (Id. ¶¶ 25-27.)   The Complaint thus alleges that the County violated Plaintiff's right to due process and of its Fourth and Fourteenth Amendment rights because the County seized and detained the Subject Vehicles without a warrant, or without an exception to the warrant requirement, after the initial justification for the seizure expired.  (Id. ¶ 1(a), 21(d), 27-30.)

The Complaint also alleges that the County did not file any forfeiture proceedings related to the Subject Vehicles, does not have a procedure that permits lienholders to participate in forfeiture proceedings, and does not have a procedure to commence forfeiture proceedings within a reasonable time after a lienholder's demand.  (Id. ¶¶ 1(a), 20, 21(a), 25, 44(a).) Plaintiff alleges that the County does not provide Plaintiff or

other interested parties with notice and/or a procedure to recover the Subject Vehicles or to challenge the Deprivations.  (Id. ¶¶ 31-36.)  Therefore, the County allegedly deprived Plaintiff of its property interests in the Subject Vehicles, or money and other legal rights, without due process.  (Id. ¶¶ 37-39.)

By way of specific example, Plaintiff alleges it has a money security interest and lien in a vehicle sold to non-party Stanley Baez (the "Baez Vehicle").  (Id. ¶¶ 11-12.)  The Baez Vehicle was titled in New York on December 16, 2019, with Baez listed as the vehicle's owner and Plaintiff listed as the first priority lienholder.  (Id. ¶ 13.)  On or about January 13, 2020, the County, through its police officers, took possession of the Baez Vehicle.  (Id. ¶¶ 14-15.)  On January 13, 2020, the County notified Plaintiff that the Baez Vehicle was detained for forfeiture purposes because Baez, the driver, used the vehicle to unlawfully flee from a police officer.  (Id. ¶¶ 16, 23.)  On February 10, 2020, Plaintiff requested that the County commence a forfeiture action pursuant to Ford Motor Credit.  (Id. ¶¶ 17-18.)  The County did not commence a forfeiture action and, as of June 16, 2020, the date of the Complaint, retained possession of the Baez Vehicle.  (Id. ¶ 19.)  Plaintiff asserts that the County illegally seized the Subject Vehicles in the same manner described in connection with the Baez Vehicle.  (Id. ¶ 20.)

PROCEDURAL HISTORY

On June 16, 2020, Plaintiff initiated this Section 1983 action against the County by asserting four causes of action. Count I asserts an array of civil rights violations arising out of the Deprivations, defined supra. (Compl. ¶¶ 40-53.)  First, Plaintiff alleges that the Deprivations violated Plaintiff's right to due process guaranteed by the Fourteenth Amendment because the County has (1) no procedure that permits lienholders to participate in forfeiture proceedings or to commence forfeiture proceedings within a reasonable time; (2) no procedure affording Plaintiff, or similarly interested parties, with notice and an opportunity to be heard before an impartial decision-maker to challenge the Deprivations or to recover the Subject Vehicles; (3) no procedure that notifies Plaintiff of the means by which it could recover the Subject Vehicles; and (4) no reasonable justification to condition release of the Subject Vehicles on Plaintiff's execution of a general release of liability in the County's favor.  (Id. ¶¶ 44(a)-(d), 48-51.)  Second, in Count I, Plaintiff also alleges that the County violated its right to be free from unreasonable seizures as guaranteed by the Fourth Amendment because, after the initial justification for the seizures expired and/or were no longer applicable, the County detained and held the Subject Vehicles without legal justification and/or without a warrant.  (Id. ¶ 45.)  Accordingly, the foregoing

constitutes the County's standard policy and procedure, which runs afoul of the constitutional protections outlined in Ford Motor Credit, County of Nassau v. Canavan, 802 N.E.2d 616 (N.Y. 2003), and Krimstock v. Kelly, 464 F.3d 246 (2d Cir. 2006) ("Krimstock III"). (Id. ¶¶ 48-53.)

As for the remaining causes of action, Count II asserts a claim for unreasonable seizure and deprivation of property without due process under the New York state constitution. (Id. ¶¶ 54-55.) Count III asserts a claim for declaratory relief, seeking an order that: (1) any release/hold-harmless/injunction obtained by the County is null, void, and of no force or effect; (2) the County is liable to Plaintiff under Sections 1983 and 1988; (3) Suffolk County Code, Chapter 818, is unconstitutional because there is no procedure to address a lienholder's demand for release of a vehicle under Ford Motor Credit; and (4) the County must unconditionally release the Subject Vehicles to Plaintiff. (Id. ¶¶ 56-59.) Finally, Count IV asserts a claim for replevin, alleging Plaintiff's right to immediately repossess of the Subject Vehicles. (Id. ¶¶ 61-62.)

DISCUSSION

I.   Legal Standard

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (citation omitted). When reviewing such a motion, the Court must liberally construe the complaint, accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Bacon v. Phelps, 961 F.3d 533, 540 (2d Cir. 2020) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). At this stage, the Court considers only those "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

II.  Analysis

The County moves to dismiss the Complaint (1) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), arguing that Plaintiff lacks standing (County Br. at 4-5); (2) pursuant to Rules 12(b)(1) and (6), arguing that Plaintiff fails to plead a claim

for declaratory relief (id. at 6-8); (3) pursuant to Rule 12(b)(7), arguing that Plaintiff failed to name the Subject Vehicle owners as necessary parties (id. at 8-9); and (4) pursuant to Rule 12(b)(6), arguing that (a) Plaintiff fails to state a claim for Monell liability (id. at 10-12); (b) the state law claims must be dismissed (id. at 12-14); and (c) Plaintiff cannot recover punitive damages from the County (id. at 15).

The Court addresses each argument in turn.

A.   Documents Considered

Plaintiff submitted four documents in support of its opposition: (1) a County Form Affidavit and Release (the "County Form"); (2) the January 13, 2020 notice from the County to Plaintiff regarding the Baez Vehicle; (3) the February 10, 2020 letter from Plaintiff to the County demanding a forfeiture proceeding; and (4) a retail installment contract for the Baez Vehicle. (Exs. A through D, attached to Duston Decl., ECF Nos. 18-2 through 18-5.) The County asks the Court to disregard these documents. (Reply at 2-4.) The Court does not consider these documents. "Although these documents were discussed throughout the Complaint and may even be integral to it . . . , given the conclusions reached herein, use of these documents would be premature." Booker v. E.T. Browne Drug Co., No. 20-CV-3166, 2021 WL 4340489, at *3 (S.D.N.Y. Sept. 23, 2021).

B.   <u>State Law Claims and the Request for Punitive Damages</u>

Plaintiff voluntarily withdraws its state law claims and its request for punitive damages. (Pl. Opp. at 34.) Accordingly, Counts II and IV are DISMISSED and the Complaint's request for punitive damages is DISMISSED as WITHDRAWN.

C.   <u>Procedural Due Process and Fourth Amendment Claims</u>

Although not explicitly stated in the Complaint, the County clarifies that Plaintiff's claims arise out of the County's Vehicle Seizure Program (the "Vehicle Seizure Program"), under which "vehicles driven by individuals arrested for [driving while intoxicated], aggravated unlicensed operation, engaging in a speed contest, or for unlawfully fleeing from police, may be seized and forfeited" under certain circumstances. (County Br. at 1 (citing Suffolk County Admin. Code (the "Code") §§ 420-5 <u>et seq.</u>, 818-13 <u>et seq.</u>, 818-21 <u>et seq.</u>, and 818-37 <u>et seq.</u>).) The Court understands that Plaintiff does not challenge the County's authority under the Code for the initial seizure of the Subject Vehicles. Rather, the Court construes Plaintiff's Fourth Amendment and Due Process claims as asserting the County: (1) fails to initiate forfeiture proceedings within a reasonable time; (2) fails to recognize Plaintiff's demands that the County institute forfeiture proceedings; and (3) does not allow Plaintiff to promptly challenge the legitimacy of, and justification for, the County's continued retention of the Subject Vehicles and/or

the County's conditions of release of the Subject Vehicles to Plaintiff, inter alia.

Before turning to the merits, the Court first summarizes the constitutional guideposts relevant to resolve the motion.

       1.   *Krimstock* (and Its Progeny) and *Ford Motor Credit*

In Krimstock v. Kelly, the plaintiffs challenged the City of New York's (the "City") practice of seizing motor vehicles of individuals "accused of driving while intoxicated and of committing other crimes for which a motor vehicle could be considered an instrumentality" and "maintain[ing] possession of these vehicles in the hope of one day gaining title to them by prevailing in civil forfeiture proceedings."  306 F.3d 40, 43-44 (2d Cir. 2002) ("Krimstock I").  The Second Circuit held that "the City's continued retention of vehicles after their warrantless seizure by the police and prior to the ultimate resolution of the forfeiture action in court" was an "intermediate deprivation, lasting months or sometimes years without any prompt hearing before a neutral fact-finder" and "constitutionally infirm."  Id. at 48.  As such, "[i]n the absence of a showing that continued impoundment constitutes a valid deprivation, seized vehicles must be released during the pendency of civil proceedings."  Id.  As a remedy, the Second Circuit ordered the City to provide "prompt post-seizure retention hearing[s], with adequate notice, for motor vehicles seized as instrumentalities of crime" pursuant to N.Y.C. Code §

14-140(b), emphasizing that "at a minimum, the hearing must enable claimants to test the probable validity of continued deprivation of their vehicles, including the City's probable cause for the initial warrantless seizure[.]"  Id. at 68–69.  In reaching this conclusion, the Second Circuit remanded the case to the district court to "fashion appropriate procedural relief[.]"  Id. at 69.

On remand, the district court "fashioned what is now known as a 'Krimstock hearing,'" where the municipality:

> has the burden to prove, by a preponderance of the evidence, that a) probable cause existed for the arrest of the vehicle's operator, b) it is likely the City would prevail in an action to forfeit the vehicle, and c) it is necessary that the vehicle remain impounded in order to ensure its availability in the eventual civil forfeiture action.

Krimstock v. Kelly, 506 F. Supp. 2d 249, 252 (S.D.N.Y. 2007) ("Krimstock IV"); see also Canavan, 802 N.E.2d 616 (the New York Court of Appeals adopting a similar standard for post-seizure deprivation procedures).  In Jones v. Kelly, 378 F.3d 198, 204 (2d Cir. 2004) ("Krimstock II"), the Second Circuit affirmed these procedures as they relate to "cars held for forfeiture" but remanded the case for additional proceedings as it relates to "cars held as arrest evidence."  In Krimstock v. Kelly, 464 F.3d 246, 255 (2d Cir. 2006) ("Krimstock III"), the Second Circuit held that due process required a "neutral fact-finder" to review a

prosecutor's decision to retain a seized vehicle as potential evidence for a criminal proceeding.

In Ford Motor Credit, the plaintiff, a secured creditor of vehicles seized by the City, challenged the City's forfeiture proceedings and argued that the City deprived it of due process by refusing to consider "secured creditors [as] 'interested persons' entitled to notice of and an opportunity to be heard in forfeiture proceedings," inter alia. 503 F.3d at 189-90. The Second Circuit first held that the plaintiff "has a property interest in the present value of a seized vehicle." Id. at 190-91. The Second Circuit then considered the amount of process due and agreed with the district court that: (1) the City's regulations were properly interpreted to include secured creditors, like the plaintiff, as "interested" parties entitled to notice and an opportunity to be heard prior to forfeiture, id. at 192-93; and, (2) the City was required to "commence the forfeiture action within twenty-five days from the date that [the plaintiff-secured creditor] makes a demand on the vehicle, provided that a claimant would otherwise be entitled to make a demand on the vehicle." Id. at 195; see also id. at 193-95 (noting that the district court afforded the plaintiff "the same rights" as a vehicle owner, and thus, "the City has a constitutional obligation to institute forfeiture proceedings within a reasonable time when an interested party, such as a [secured creditor] like [plaintiff], seeks a disposition

with respect to a vehicle in which it holds a cognizable property interest" (first alteration in original; citation omitted)).

### 2.   Plaintiff's Procedural Due Process Claims[3]

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV. To state a violation of due process, a plaintiff must allege: "1) whether plaintiffs possess a liberty or property interest protected by the Due Process Clause; and, if so, 2) whether existing state procedures are constitutionally adequate." Ford Motor Credit, 503 F.3d at 190 (quoting Kapps v. Wing, 404 F.3d 105, 112 (2d Cir. 2005)).

Here, the Complaint alleges that the County violated Plaintiff's procedural due process rights in various ways.  As an initial observation, it appears that both parties conflate arguments relevant to vehicle forfeiture proceedings with arguments relevant to actions alleging due process violations, such as a due process right to demand that the County initiate a forfeiture proceeding within a reasonable time.  (See County Br. at 9 (citing New York state cases disposing of forfeiture proceedings and wherein lienholders claim a superior right of

---

[3] Neither party addresses the Complaint's allegations regarding Plaintiff's substantive due process rights.  (Compl. ¶¶ 37-38.) As such, the Court declines to consider the viability of such a claim sua sponte.

possession to seized vehicles based upon the vehicle owners' defaults under financing agreements); see id. at 5 (same); see also Pl. Opp. at 15-16 & n.9 (citing New York state vehicle forfeiture cases wherein the courts determine the parties' possessory rights to a seized vehicle)). In Ford Motor Credit, the due process considerations were limited to whether the Fourteenth Amendment required the City to recognize a lienholder as a valid participant in a forfeiture proceeding and to treat the plaintiff-lienholder "as a claimant for purposes of triggering the City's duty to commence a forfeiture action within twenty-five days." 503 F.3d at 193. Thus, the due process protections articulated in Ford Motor Credit require only that the County abide by its "constitutional obligation to institute forfeiture proceedings within a reasonable time when an interested party, such as [Plaintiff here . . . ,] seeks a disposition with respect to a vehicle in which it holds a cognizable property interest." Id. at 194-93 (citation omitted); see also id. at 195 & n.13 (noting "only that [the Second Circuit reads] the district court's opinion to afford Ford Motor Credit the same rights in this respect as a claimant, and no more" (emphasis added)).

The Complaint fails to incorporate how the procedures, or lack thereof, under the Code or County policy are constitutionally infirm as they relate to vehicle owner's rights

and lienholder's rights.[4]  Further, and as will be addressed below, Plaintiff's claims are wholly misplaced to the extent that they rest on the argument that <u>Krimstock</u> (and its progeny) and <u>Ford Motor Credit</u> establishes that Plaintiff has a present possessory right to the Subject Vehicles such that the County must automatically release the seized Subject Vehicles to Plaintiff. (<u>See, e.g.</u>, Pl. Opp. at 5-6, 10.)  Similarly, the County's arguments are misplaced to the extent they rest on the assumption that its due process obligations are triggered only after Plaintiff establishes its "superior possessory interest" in a seized vehicle.  (<u>See, e.g.</u>, County Br. at 4.)

        Against this background, the Court begins its analysis.

            a.   <u>Plaintiff Alleges a Valid Property Interest</u>

        The County argues that Plaintiff lacks standing because it does not have a present possessory interest in the seized Subject Vehicles that is superior to the vehicle owners' rights. (County Br. at 4-5; Reply at 5-8.)  Although the County characterizes this assertion as a standing argument, the argument is better understood as claiming Plaintiff lacks a valid property interest in the Subject Vehicles and fails to adequately state a

_____

[4] Indeed, the Complaint's two references to the Code are variations of a request to: "[c]onfirm[] that Suffolk County Code, Chapter 818, is unconstitutional in that there is no procedure to address a lienholder's demand for release of a vehicle" under <u>Ford Motor Credit</u>.  (Compl. ¶¶ 59, 60(c).)

procedural due process claim.   Thus, the pertinent question is whether Plaintiff, as a lienholder over the Subject Vehicles, has a recognizable property interest protected by due process.   The Second Circuit in Ford Motor Credit answered this question in the affirmative and explicitly "disagree[d]" that the plaintiff's "only cognizable property interest is in a vehicle's sale proceeds."   503 F.3d at 190-91.   Given the Second Circuit's holding that a lienholder "also has a property interest in the present value of a seized vehicle," id. at 191, Plaintiff, as a lienholder, has plausibly alleged a property interest in the present value of the Subject Vehicles.

However, this conclusion is limited to Plaintiff's property interest in the Baez Vehicle, in which the Complaint alleges that Plaintiff "obtained a purchase money security interest and lien."   (Compl. ¶¶ 11-19.)   To the extent Plaintiff alleges that it was deprived of its interests in other, unspecified Subject Vehicles (other than the Baez Vehicle), the Complaint's references to "Subject Vehicles," without more, is too "vague, conclusory, and speculative" to support a due process claim.   Pelt v. City of New York, No. 11-CV-5633, 2013 WL 4647500, at *7 n.10 (E.D.N.Y. Aug. 28, 2013).   Should Plaintiff elect to file an amended complaint, it must specify the property, i.e., the Subject

Vehicles, that it claims were seized and retained without due process of law.[5]

Moreover, Plaintiff is mistaken to the extent it suggests that Ford Motor Credit provides that a lienholder has a protected property interest in "the immediate right to take possession" of a seized vehicle. (Compl. ¶ 42.) "Although federal law controls what process is due, property interests themselves 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Ford Motor Credit Co. v. New York City Police Dep't, 394 F. Supp. 2d 600, 609 (S.D.N.Y. 2005) ("Ford Motor Credit II") (quoting Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005)).  To that end, "it must be emphasized that unlike" titled vehicle owners, Plaintiff, as "the innocent lienholder, does not have a present possessory right" to the seized vehicles. Prop. Clerk v. Leon, 960 N.Y.S.2d 341 (Sup. Ct. N.Y. Cnty. 2010); accord Prop. Clerk of N.Y.C. Police Dep't v. Molomo, 613 N.E.2d 567, 567 (N.Y. 1993) (the lienholder "had no present possessory right in the vehicle"); Malafi v. 2002 Dodge, Vin No. ID7HU18Z92J206663, 836 N.Y.S.2d 486 (Sup. Ct. Suffolk Cnty. 2006) ("It is well settled that the [lienholder] does not, at this

---

[5] Although limited to the Baez Vehicle, for convenience, the Court continues to refer to the "Subject Vehicles" throughout this Order.

time, have a possessory right to the subject vehicle"). Rather, as stated above, a lienholder like Plaintiff has a property interest in the present value of a seized vehicle subject to a lien, "and the same rights as a vehicle claimant-owner to expect that a civil forfeiture action be promptly instituted and then be afforded due process and an opportunity to be heard as an active participant in such action." Leon, 960 N.Y.S.2d 341 (citing Ford Motor Credit, 503 F.3d at 193-95). Therefore, Plaintiff has no property interest in the "present possessory right to" the Subject Vehicles.

Finally, because Plaintiff has a property interest in the Subject Vehicle's present value separate and apart from the vehicle owner's property interests, the Court denies the portion of the County's motion to dismiss pursuant to Rule 12(b)(7) for failure to name necessary parties. (See County Br. at 8-9.)

b.    The Process Plaintiff is Due

Having established that Plaintiff has plausibly alleged a property interest in the "present value of a seized vehicle," Ford Motor Credit, 503 F.3d at 190-91, the question turns on whether Plaintiff has plausibly alleged that the County deprived Plaintiff of its property interest without due process. The inquiry necessarily depends on how much process is due, which the parties fail to meaningfully address. As discussed below, the Complaint plausibly alleges that, in certain circumstances, the

County deprived Plaintiff of its property interest without due process. However, the Court is left to surmise the remaining bases of Plaintiff's due process claim.  At this stage, the Court declines to engage in guesswork and grants Plaintiff leave to amend to clarify its claims.

                    i.    <u>Notice and Opportunity to be Heard in Connection with Forfeiture Proceedings and the Imposition of Liens</u>

The Court agrees with Plaintiff that its property interest in the present value of the Subject Vehicles entitles it to notice of, and the right to participate in, forfeiture proceedings to protect its interest in the Subject Vehicles, in the same manner that the County (or the Code) affords vehicle owners the right to a speedy disposition of the forfeiture process. <u>Ford Motor Credit</u>, 503 F.3d at 192-95.  As such, the Court carefully parses the Complaint and finds that it plausibly alleges that the County has a policy and procedure of (1) refusing to recognize Plaintiff's demands that the County institute forfeiture proceedings; and/or (2) failing to implement a procedure whereby lienholders can demand that the County institute forfeiture proceedings; and/or (3) failing to initiate forfeiture proceedings within a reasonable time after Plaintiff's demands.  (Compl. ¶¶ 17-22, 39); <u>Ford Motor Credit</u>, 503 F.3d at 195.

The County argues that Plaintiff's due process claim is unavailing because the Code "provides that a forfeiture action may

be commenced 'within 180 days after the disposition of the summons or arrest for the offense[.]'" (Reply at 8 (citing Code § 818-40(F)).) Although the Complaint does not explicitly claim that the Code is unconstitutional as written and as applied, "[t]he Due Process Clause 'requires the Government to commence a forfeiture action within a reasonable time of seizure.'" Ford Motor Credit II, 394 F. Supp. 2d at 614 (quoting United States v. Banco Cafetero Panama, 797 F.2d 1154, 1163 (2d Cir. 1986)). Neither party briefs whether 180 days is a "reasonable" amount of time for the Government to commence a forfeiture action. The Court declines to make that determination on the undeveloped record.

Moreover, the Complaint plausibly alleges that the County has a policy and procedure of depriving Plaintiff of its property without a meaningful opportunity to challenge the imposition of possessory liens on the Subject Vehicles. (Compl. ¶¶ 21(c), 31, 43(c), 51; HVT, Inc. v. Port Auth. of New York & New Jersey, No. 15-CV-5867, 2018 WL 3134414, at *7 (E.D.N.Y. Feb. 15, 2018) ("Temporary deprivations in the form of liens require due process protections" and "the attachment of a lien constitutes a deprivation of property as well, even if it is only temporary" (citing Connecticut v. Doehr, 501 U.S. 1, 12 (1991))), report and recommendation adopted by 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018); see also Am. Honda Fin. Corp. v. Twp. of Aston, No. 20-CV-3267, 2021 WL 2681289, at *6 (E.D. Pa. June 30, 2021) (noting that

20

"towing and storage fees impaired Honda's interest by effectively subordinating the priority of the Company's lien"); but see HVT, Inc. v. Port Auth. of New York & New Jersey, No. 15-CV-5867, 2021 WL 3400550, at *6 n.8 (E.D.N.Y. Aug. 4, 2021) (noting "that it may be constitutionally permissible for some fee accrual post-seizure and prior to when the vehicle is retrieved or the hearing is held, but also not[ing] that permissible fee accrual may be dependent upon how soon the hearing can take place."), report and recommendation adopted by 2021 WL 3828475 (E.D.N.Y. Aug. 26, 2021).

ii. Notice and Opportunity to be Heard in Connection with *Krimstock* Hearings

The Court struggles to distinguish whether Plaintiff's due process claims are also rooted in allegations that (1) the County fails to provide Plaintiff with notice of a Krimstock hearing; and/or that (2) due process requires that the County must permit Plaintiff to appear at a Krimstock hearing to contest retention of the subject vehicle on the basis that the County will not succeed at a forfeiture proceeding as result of Plaintiff's lien. (See Compl. ¶ 51(c) (citing the County's violation of the constitutional parameters of Krimstock); id. ¶ 48 (alleging that the "conduct of Suffolk in not following Ford Motor Credit . . . and in not seeking to have a prompt impartial review of its detention was consistent with" an alleged unconstitutional "procedure and policy"); see also id. ¶ 44(b); Pl. Opp. at 4-5

(arguing that the County violates due process by "not relinquishing possession where it has no likelihood of succeeding in accordance with Krimstock").)

As to the first point, the Complaint alleges that Plaintiff received notice of a Krimstock hearing, so claims arising out of an alleged lack of notice are arguably moot.  (Compl. ¶ 16.)  As to the second point, due process does not entitle lienholders to notice and an opportunity to be heard at a Krimstock retention to challenge the continued retention of a seized vehicle or to argue the merits of a forfeiture proceeding.  "In gauging the constitutional adequacy of procedures, the familiar Mathews v. Eldridge, 424 U.S. 319 . . . (1976), balance framework applies," and the Court must balance:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;   and    (3) the   Government's interest, including the function involved and the fiscal and administrative burdens that the additional   or   substitute   procedural requirement would entail.

Ford Motor Credit II, 394 F. Supp. 2d at 609 (citation omitted).

In Krimstock I, the Second Circuit balanced these factors and held that claimants, whose cars had been seized as instrumentalizes of a crime, were entitled to prompt post-deprivation hearings to challenge the seizure and the City's

22

retention of those vehicles.  The court reasoned:  "[a] car or truck is often central to a person's livelihood or daily activities" and "an individual must be permitted to challenge the City's continued possession of his or her vehicle during the pendency of legal proceedings where such possession may ultimately prove improper and where less drastic measures than deprivation pendent lite are available and appropriate."  306 F.3d at 44.  In Property Clerk of Police Department of City of New York v. Harris, the New York Court of Appeals recognized that neither Canavan, cited supra, nor Krimstock considered the "due process rights of innocent co-owners," balanced the Mathews factors, and concluded that "due process requires that an innocent co-owner [of a seized vehicle] be given an opportunity to demonstrate that his or her present possessory interest in a sized vehicle outweighs the City's interest in continuing impoundment."  878 N.E.2d 1004, 1005 (N.Y. 2007).  In reaching this conclusion, the Court of Appeals stressed that its decision was "a narrow one, concerned only with due process protection of innocent co-owners' present possessory interest in the use of impounded vehicles to obtain critical life necessities."  Id. at 1012 (emphasis added).

        In Ford Motor Credit II, the district court held that the plaintiff "must be given notice and an opportunity to be heard in connection with forfeiture proceedings relating to vehicles in which it holds a security interest."  394 F. Supp. 2d at 613.  The

district court explained that "[i]f a forfeiture action is successful, the lienholder's security interest will be extinguished.  If a forfeiture action is not successful, the lienholder's security interest may persist.  Accordingly lienholders, . . . , possess a substantial interest in the outcome of the forfeiture proceedings relating to the vehicles in which they hold security interests."  Id. at 610-11.  The court continued that "the destruction of a cognizable property interest" -- i.e., the extinguishment of a lien -- "without due process of law violates the Due Process Clause."  Id. at 611-12.  The Second Circuit in Ford Motor Credit agreed.  503 F.3d at 193 (noting a lienholder's ability to "protect its interest in the present value of a seized vehicle" by, for example, "expedit[ing] [forfeiture] litigation by moving the court to dismiss the action for failure to prosecute" or "seeking an order dismissing the case on account of the vehicle owner's delinquency in meeting deadlines" (emphases and citations omitted)).

Applying the foregoing analysis here, the Court concludes that lienholders do not possess a similar "substantial interest" in a Krimstock retention hearing because the outcome of such a hearing does not result in the "destruction of a cognizable property interest."  Moreover, unlike co-owners who have a valid "possessory interest in the use of impounded vehicles to obtain critical life necessities," the same cannot be said for innocent

lienholders.   Cf. Harris, 878 N.E.2d at 1011-12.   At most, a
Krimstock hearing may result in the retention of a seized vehicle
pending a forfeiture proceeding, which Plaintiff is entitled to
demand, participate in, and assert defenses at -- such as its right
to repossess the Subject Vehicles -- under Ford Motor Credit.

Assuming, arguendo, that Plaintiff is alleging a stake
in the outcome of a Krimstock hearing, Krimstock I forecloses
Plaintiff's claim that it is entitled to appear at a Krimstock
hearing to demand a full-blown hearing -- akin to a hybrid
replevin/forfeiture proceeding -- regarding the County's alleged
inability to succeed at forfeiture due to Plaintiff's lien over
the seized vehicles.   The Second Circuit explicitly rejected this
fast-track to forfeiture request, stating:

> We hasten to point out that we do not envision
> the retention hearing as a forum for
> exhaustive evidentiary battles that might
> threaten to duplicate the eventual forfeiture
> hearing.   Inasmuch as the purpose of the
> hearing is the limited one of determining
> whether the vehicle should be returned to its
> owner during the pendency of proceedings, due
> process should be satisfied by an initial
> testing of the merits of the City's
> case. . . .

Krimstock I, 306 F.3d at 69-70 (emphases added).   Therefore, while
due process entitles lienholders to notice and an opportunity to
be heard prior to forfeiture of a seized vehicle, due process does
not entitle lienholders to notice and an opportunity to be heard
at a Krimstock retention hearing to challenge the County's

likelihood of success at a forfeiture proceeding.  Thus, to the extent Plaintiff's Complaint can be construed to raise such a claim, it is not plausibly alleged.

### iii. Notice and Opportunity to be Heard in Connection With the Recovery and/or Repossession of the Subject Vehicles

The Complaint also asserts that the County violates Plaintiff's due process rights by failing to provide notice and an opportunity to be heard regarding Plaintiff's alleged right to recover and/or repossess the Subject Vehicles, separate from a Krimstock retention hearing.  Further, Plaintiff alleges that the County has a policy and procedure of requiring conditions of payment and/or general releases before releasing seized vehicles to Plaintiff, as a lienholder.  See, e.g., Fasciana v. County of Suffolk, 996 F. Supp. 2d 174, 181 (E.D.N.Y. 2014) (Seybert, J.) (concluding that a vehicle owner stated a due process claim based on allegations that the County "maintained a practice under which, at the conclusion of retention hearings within which the County does not satisfy the Krimstock three prong test, its hearing officers essentially order the County to retain continuing possession of seized vehicles indefinitely, unless and until each respective owner signs a General Release in favor of the County" (emphases in original)); see also Ruane v. County of Suffolk, No. 12-CV-1658, 2015 WL 2337329, at *5 (E.D.N.Y. May 13, 2015) (granting the County's motion for summary judgment, finding that

the evidence did not support a finding that the County "has a policy or practice of requiring a general release from the vehicle owner when the forfeiture court has dismissed the forfeiture proceeding and ordered the vehicle returned to the owner[.]").

The Court pauses because Plaintiff does not have a present possessory interest in the Subject Vehicles, as discussed supra. Moreover, the parties do not indicate when a plaintiff/lienholder's right in the present value of the Subject Vehicles is transformed into a present possessory right to the Subject Vehicles, whether by default or breach of relevant financing agreements between vehicle owners and Plaintiff. Indeed, Plaintiff does not provide any authority for its conclusion that a lienholder is entitled to immediate repossession, i.e., "a present possessory right," in the Subject Vehicles "every single time [the County] seizes any vehicle for forfeiture on which [Plaintiff] holds a lien by virtue of the forfeiture itself."[6]

---

[6] In opposition, Plaintiff cites to the County Form to support the contention that the County requires lienholders "to provide information regarding its lien and the default under [Plaintiff's] contract with its customer which would permit [Plaintiff] to retake possession of a particular vehicle." (Pl. Opp. at 6 (citing County Form, Ex. A, ECF No. 18-2).) However, as stated above, the Court declines to consider the County Form at this time. In any event, the Complaint's references to the County Form are limited to the requirement that lienholders execute a general release, inter alia, in favor of the County. (Compl. ¶¶ 21(b), 32-37, 43(b), 44(d), 49.) The Court will not allow Plaintiff to amend its pleading through its opposition papers to allege facts surrounding its alleged right to repossess the Subject Vehicles and/or the County's general procedures for releasing the Subject Vehicles.

(Pl. Opp. at 16; id. at 15–16); cf. Leon, 960 N.Y.S.2d 341 ("Pursuant to UCC § 9–609 et seq., based on a contract default, a secured creditor may seek to recover possession of collateral with or without judicial process" (emphasis added)).  Therefore, based upon the limited record, the Court does not consider what process is due, if any, in this context.

Alternatively, the question may be better framed as whether a lienholder, with a property interest in the present value of a Subject Vehicle, is entitled to notice and an opportunity to be heard regarding its right to recover the seized vehicles, including the conditions of payment and/or general release, in situations where the County:  (1) declines to move forward with forfeiture; or (2) fails to meet its burden at a Krimstock hearing; or (3) is ordered to return the seized vehicles by a forfeiture court, inter alia.  The parties do not discuss the lienholders rights vis-à-vis the vehicle owner's rights, including a vehicle owner's presumptive right to notice and an opportunity to be heard regarding a lienholder's repossession of the seized vehicle. Moreover, neither party has provided the Court with arguments regarding the "familiar Mathews v. Eldridge, . . . , balance

---

Hurley v. Town of Southampton, No. 17-CV-5543, 2018 WL 3941944, at *18 (E.D.N.Y. Aug. 13, 2018) ("[I]t is well settled that '[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss.'" (quoting K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013))).

framework" that the Court must consider in "gauging the constitutional adequacy of procedures," including whether the County must provide Plaintiff with an opportunity to request and/or contest repossession of the Subject Vehicles. <u>Ford Motor Credit II</u>, 394 F. Supp. 2d at 609 (quoting <u>Nat'l Org. for Women v. Pataki</u>, 261 F.3d 156, 167–68 (2d Cir. 2001)).  At this juncture, the Court declines to pass on the merits of these particular claims without clarification from Plaintiff as to the bases of its due process claims and without the benefit of the parties' input.

***

For all of the foregoing reasons, the County's motion to dismiss the due process cause of action is denied only to the extent that Plaintiff plausibly states a violation of its due process rights to notice and an opportunity to be heard at forfeiture proceedings and regarding the imposition of liens; the County's motion seeking dismissal of the due process claim(s) is otherwise granted as provided herein.  Plaintiff is granted leave to file an amended complaint consistent with this Order.

### 3.   Plaintiff's Fourth Amendment Claims

In addition to various violations of due process, Count I of the Complaint asserts that the County violates the Fourth Amendment by: (1) retaining the Subject Vehicles indefinitely without initiating any forfeiture proceedings, resulting in unreasonable seizures of the Subject Vehicles; (2) retaining the

29

Subject Vehicles without holding any Krimstock hearings, resulting in unreasonable seizures of the Subject Vehicles; (3) failing to acknowledge and provide Plaintiff, as a lienholder, with a method to challenge the Deprivations, including the County's continued seizure of the Subject Vehicles at a Krimstock hearing or a forfeiture proceeding.

"The Supreme Court has held that the Fourth Amendment protects claimants against unreasonable seizure of their property in the civil forfeiture context." Krimstock I, 306 F.3d at 49 (collecting cases). In Krimstock I, the Second Circuit considered the role of the Fourth Amendment in context of civil forfeiture and reiterated that "the seizure and forfeiture of property are two distinct events under the [federal] civil forfeiture laws." 306 F.3d at 50 (emphasis added; brackets in original) (quoting Marine Midland Bank, N.A. v. United States, 11 F.3d 1119, 1124 (2d Cir. 1993)). "While both events require the government to have probable cause, the government is not required to demonstrate probable cause until the forfeiture trial unless a claimant challenges the validity of the seizure before trial." Id. (emphasis in original) (quoting Marine Midland Bank, 11 F.3d at 1124). "If the government, once challenged, cannot establish probable cause for the initial seizure or offer post-seizure evidence to justify continued impoundment, retention of the seized property runs afoul of the Fourth Amendment." Id. Accordingly,

the Second Circuit ordered that "claimants be given a prompt post-seizure retention hearing," because "some risk of erroneous seizure exists in all cases, and in the absence of prompt review by a neutral fact-finder, we are left with grave Fourth Amendment concerns as to the adequacy of an inquiry into probable cause that must wait months or sometimes years before a civil forfeiture proceeding takes place." Id. at 50-51 (emphasis added).  In direct response to these concerns, inter alia, the district court "fashioned" the contours of a Krimstock hearing.  Id. at 70; Krimstock IV, 506 F. Supp. 2d at 252.

Although attenuated, the Complaint states a Fourth Amendment claim only to the extent that Plaintiff alleges that the County has a policy or procedure of:  (1) indefinitely detaining Subject Vehicles and refusing to commence forfeiture proceedings, notwithstanding Plaintiff's requests for the County to initiate forfeiture proceedings; and/or (2) requiring conditions of payment and a general release from liability after the forfeiture court ordered a Subject Vehicle returned to the Plaintiff.  (Compl. ¶¶ 1(b), 19-20, 21(a)-(c), 41(a)-(c), 48-49); Krimstock I, 306 F.3d at 50-51; Hines v. City of Albany, 542 F. Supp. 2d 218, 232 (N.D.N.Y. 2008) (denying motion to dismiss, citing Krimstock I, and finding that a plaintiff adequately stated a Fourth Amendment illegal seizure claim where the complaint alleged that "Defendants seized [the plaintiff's] vehicle without a warrant, retained

possession of the vehicle for over one year despite repeated requests for its return, and failed to provide [the plaintiff] with a hearing"); see also Fasciana, 996 F. Supp. 2d at 181-83 (observing, in context of Krimstock hearings and vehicle owners, that when a vehicle must be returned, the release "is not contingent on any other condition, agreement, or circumstance" and "such contingency would render" forfeiture proceedings a "nullity").

Plaintiff's remaining allegations and arguments are better categorized as due process violations. This includes whether the County must provide Plaintiff with a procedure or method to recover and/or repossess the Subject Vehicles, discussed supra. Ferrari v. Cnty. of Suffolk, 790 F. Supp. 2d 34, 45 n.12 (E.D.N.Y. 2011) (Seybert, J.) (when "a government 'seize[s] property not to preserve evidence of wrongdoing, but to assert ownership and control over the property itself,' such as when it seeks 'forfeiture,' the Due Process clauses of the Fifth and Fourteenth Amendments control." (quoting United States v. James Daniel Good Real Prop., 510 U.S. 43, 51-52 (1993))).

The Complaint also alleges that once the County determines that the initial seizure justification expired, i.e., the County determines the Subject Vehicle is subject to a lien, the County's continued retention of the Subject Vehicles without a renewed warrant or legal justification constitutes an

unreasonable seizure.  (Compl. ¶¶ 21(d), 23-30, 41-42, 43(d), 45.)
Plaintiff's Fourth Amendment claim arising out of this theory
necessarily fails because it "has challenged only the [County's]
retention of the seized [Subject Vehicles] -- not their initial
seizure."  Bennett v. Dutchess Cnty., New York, 832 F. App'x 58,
60 (2d Cir. 2020) (summary order).  As stated above, Plaintiff
does not challenge the County's authority (through its officers)
under the Code to seize the Subject Vehicles pursuant to the
Vehicle Seizure Program.  And, as recently articulated by the
Second Circuit, "'a seizure claim based [solely] on the unlawful
retention' of property that was lawfully seized has been recognized
as 'too novel a theory to warrant Fourth Amendment protection.'"
Id. (quoting Shaul v. Cherry Valley-Springfield Cent. Sch. Dist,
363 F.3d 177, 187 (2d Cir. 2004)).  Thus, "[t]o the extent the
Constitution affords . . . any right with respect to a government
agency's retention of lawfully seized property, it would appear to
be procedural due process."  Id. (alteration in original) (quoting
Shaul, 363 F.3d at 187); accord Tammaro v. City of New York, No.
13-CV-6190, 2018 WL 1621535, at *11 (S.D.N.Y. Mar. 30, 2018).

          Finally, through its opposition, Plaintiff appears to
argue that:  (1) the existence of liens over the Subject Vehicles
renders it impossible for the County to prove a likelihood of
success on the merits at a forfeiture proceeding, the second factor
the County must prove at a Krimstock hearing; (2) therefore, the

County must immediately release those vehicles without a <u>Krimstock</u> hearing; and, (3) the County's continued retention of the Subject Vehicles after discovering the lien(s) is an unreasonable seizure in violation of the Fourth Amendment.   (Pl. Opp. at 17-20.) Plaintiff does not cite to any authority for the proposition that <u>Krimstock</u> hearings or forfeiture proceedings are unnecessary in these circumstances.  (See <u>id.</u> at 17-18 (citing a favorable quote from <u>Krimstock I</u>, and arguing that the County cannot succeed on the merits of a forfeiture proceeding due to certain Code provisions).)   Like the plaintiffs in <u>Krimstock I</u>, the Court queries whether Plaintiff here seeks to fast-track the forfeiture process and obviate <u>Krimstock</u> hearings and forfeiture actions. See <u>Krimstock I</u>, 306 F.3d at 48 (noting that the plaintiffs "essentially" sought "an early opportunity to test the City's likelihood of success on the merits of the forfeiture action"). At this juncture, the Court declines to find that the County commits a Fourth Amendment violation in every situation that it seizes a vehicle subject to a lien, without more.

* * *

Accordingly, the County's motion to dismiss the Fourth Amendment claim is denied only to the extent that Plaintiff plausibly alleges Fourth Amendment claim arising out of an alleged County policy or procedure of:  (1) indefinitely detaining Subject Vehicles and refusing to commence forfeiture proceedings,

notwithstanding Plaintiff's requests that the County initiate forfeiture proceedings; and/or (2) indefinitely detaining Subject Vehicles and requiring conditions of payment and/or general releases after the forfeiture court ordered a Subject Vehicle's return.  The remaining portion of the motion seeking dismissal of the Fourth Amendment claim is otherwise granted as provided herein, and Plaintiff is granted leave to amend to clarify this claim.

     D.    Plaintiff's *Monell* Liability Claims

     The County argues that Plaintiff fails to state a valid Monell claim, arguing that the Complaint asserts "nothing more than speculative, vague and conclusory allegations of deprivation of its Constitutional rights."  (County Br. at 10-12.)  While a close call, the Court disagrees.

     "To state a claim for municipal liability under 42 U.S.C. § 1983, a plaintiff must show three elements: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'"  Corbley v. Cnty. of Suffolk, 45 F. Supp. 3d 276, 283 (E.D.N.Y. 2014) (quoting Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir.1995)).  "A plaintiff can satisfy the municipal policy requirement by alleging 'a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware.'"  Newson v. City of New York, No. 16-CV-6773, 2019 WL 3997466, at *7 (E.D.N.Y. Aug. 23, 2019)

(quoting Benitez v. City of New York, No. 17-CV-3827, 2018 WL 2973387, at *6 (E.D.N.Y. Jun. 13, 2018)).  "The plaintiff may also show 'a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.'"  Id. (quoting Benitez, 2018 WL 2973387, at *6).  Further, the "pleading standard for Monell claims is no greater than for any other claim subject to Federal Rule of Civil Procedure 8(a)."  Id. (citations omitted).  It is true that "a plaintiff who 'mere[ly] assert[s]' that a municipality has a custom or policy condoning or ratifying unconstitutional conduct, 'in the absence of allegations of fact tending to support, at least circumstantially, such an inference' has not adequately pleaded a Monell claim."  Id. (quoting Montero v. City of Yonkers, New York, 890 F.3d 386, 403-404 (2d Cir. 2018) (subsequent history omitted)).  "But this is simply a restatement of the standard applicable to notice pleading generally, namely, that a complaint must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Iqbal, 556 U.S. at 678).

Here, as recited above, Plaintiff adequately alleges the deprivation of some constitutional rights.  See generally supra. The question thus becomes whether Plaintiff has pled the County's

liability for those deprivations.  The Complaint alleges that it is the County's "standard procedure and policy" to disregard <u>Ford Motor Credit</u> by retaining the Subject Vehicles without providing Plaintiff, as lienholder, with notice and opportunity to be heard at a forfeiture proceeding or regarding the Deprivations, <u>inter alia</u>, and that the County failed to properly train or supervise subordinates "regarding the process due in conjunction with the seizure, detention and assertion of charges and liens against vehicles is contrary to well-settled constitutional law." (Compl. ¶¶ 48-53.)  Plaintiff further cites to the County's seizure of the Baez Vehicle as an example of the County's "established practices for handling vehicles which are ostensibly held for forfeiture purposes." (<u>Id.</u> ¶¶ 11-22.)  At this stage, these allegations are sufficient to plausibly state a claim for municipal liability under Section 1983.  <u>Corbley</u>, 45 F. Supp. 3d at 283 (finding a complaint adequately alleged <u>Monell</u> liability where it "references thirty-three cases other than his own to allege that it was a custom and/or policy of the County to disregard the <u>Krimstock</u> standards when seeking continued retention of seized vehicles, that the County failed to adequately train or supervise County-appointed hearing officers in the findings required by law, or ensure neutrality by them.") (collecting cases); <u>Ferrari</u>, 790 F. Supp. 2d at 45 (finding the plaintiff adequately alleged <u>Monell</u> liability arising out of a failure to train theory where the complaint

alleged the County "knowingly train[s] and/or deliberately permit[s], the hearing officers who 'preside' over retention hearings to deliberately and systematically refuse to comport with the requirements of Due Process or the Suffolk County Code"). The portion of the County's motion seeking dismissal of the <u>Monell</u> claim is thus denied.

E.   <u>Plaintiff's Request for Declaratory Relief</u>

The County argues that the claim for declaratory relief (Count III) must be dismissed because Plaintiff "has not sufficiently ple[]d a continuing or imminent concrete injury, as the complaint is devoid of any facts sufficient to establish an actual case or controversy warranting" judicial intervention. (County Br. at 6-8.)

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." <u>Corbley</u>, 45 F. Supp. 3d at 283 (quoting <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95 (1983)). While past harms cannot support a claim for injunctive relief, "[t]o establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Kamerling v. Massanari</u>, 295 F.3d 206, 214 (2d Cir. 2002)).

The Complaint alleges that the County continues to commit constitutional violations because the County continues to retain and detain the Baez vehicle.  (Compl. ¶ 15.)  Therefore, when viewing the allegations in a light most favorable to Plaintiff, the Complaint plausibly states a claim for declaratory and injunctive relief.  However, the Complaint does not support Plaintiff's contention that it is "likely to continue to suffer harm as a result of [the County's] unconstitutional policies and/or customs because [the County] will continue to seize vehicles on which [Plaintiff] has a lien."  (Pl. Opp. at 30 (citing Compl. ¶ 8).)  These specific allegations are noticeably absent from the Complaint, and it is well-settled that a plaintiff cannot amend its complaint by asserting new facts or theories in opposition to a motion to dismiss.  See Hurley, 2018 WL 3941944, at *18.  This portion of the motion is thus granted in part and denied in part.

III. Leave to Amend

Plaintiff requests leave to file an amended complaint. (Pl. Opp. at 34.)  It is "within the sound discretion of the district court to grant or deny leave to amend," which should be freely given "when justice so requires."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); FED. R. CIV. P. 15(a)(2).  "[A] district court may deny leave to amend" when "amendment would be futile because the problem with the claim 'is substantive . . . [and] better pleading will not cure it.'"

Reynolds v. City of Mount Vernon, No. 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (alteration in original) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

While it is true that Plaintiff has not attached a proposed amended complaint to its opposition papers (see Reply at 4), the Second Circuit has stated that "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco, 222 F.3d at 112 (internal quotation marks and citation omitted); see also FED. R. CIV. P. 15(a)(2). Here, the Court finds that a more detailed and organized pleading may cure many of the pleading deficiencies identified herein, including the failure to identify the Subject Vehicles other than the Baez Vehicle, the failure to separate and identify each alleged constitutional deprivation, the failure to separate each cause of action as standalone counts, and the failure to incorporate the Code, or explain its significance, to the claims at issue, inter alia. Plaintiff is thus GRANTED leave to file an Amended Complaint within thirty (30) days of, and consistent with, this Order.

* * *

<u>CONCLUSION</u>

For the reasons stated, the County's motion to dismiss (ECF No. 16) is GRANTED in part and DENIED in part.  Plaintiff voluntarily withdraws its state law claims (Counts II and IV) and its request for punitive damages; accordingly, those claims and that request are DISMISSED.  Plaintiff is GRANTED leave to file an Amended Complaint within thirty (30) days of, and consistent with, this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September  30  , 2021
          Central Islip, New York

41